**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAED AL KHADER and HANI HASAN AHMAD EL KHADER a/k/a AL KHADER, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL POMPEO, United States Secretary of State, United States Department of State, et al., <br><br> Defendants. | Case No. 18-cv-1355 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Raed Al Khader ("Raed") and Hani Hasan Ahmed El Khader a/k/a Al Khader ("Hani") bring their complaint for declaratory relief challenging the July 16, 2015 decision of the U.S. Consulate in Riyadh denying Hani's immigrant visa application and finding him to be inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for a material misrepresentation. Currently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim [25]. For the reasons explained below, Defendants' motion [25] is granted. This dismissal is without prejudice to Plaintiffs' opportunity to file a timely motion for leave to file an amended complaint by March 4, 2019, if they believe they can do so consistent with this Court's opinion and Rule 11. If no motion is filed by that date, the Court will enter an order converting the dismissal to be with prejudice and will enter a Rule 58 final judgment.

## I. Background[1]

Plaintiffs Raed and Hani are brothers. Their family is originally from Palestine. Raed is a United States citizen, living in Highland Park, Illinois. Hani is a citizen of Jordan and currently resides in Saudi Arabi. Hani lived in the United States from December 1988 until July 2002 and maintained lawful immigration status during that period under several types of visas.

In April 1998, Ameritrust Mortgage Corporation filed a Form 1-140 immigrant visa petition for alien worker on Hani's behalf. Legacy INS approved the petition. However, in December 2001, legacy INS issued a Notice of Intent to Revoke ("NOIR") the visa on the basis that Hani had entered into a sham marriage with his by-then ex-wife, Nadia Muna ("Muna"). In response, Hani filed several requests with legacy INS to review the information alleged and contained in his "A-file" so that he could adequately respond to the NOIR. [2] at 14. Legacy INS refused.

Instead, legacy INS allegedly "engaged in a fishing expedition to find a reason to deny" Hani's visa. [2] at 18. In March 2001, legacy INS sent a special agent to interview Muna. The complaint acknowledges that "Muna provided conflicting statements to the special agent, allegedly claiming she was never in a real marriage with Plaintiff Hani, but then stating that had she known of Plaintiff Hani's immigration status" (he did not have lawful permanent status in the United States) "'she would have resisted even more than she did the wishes of her parents, and would not have married [him].'" [2] at 13 (quoting [2-5] at 42, exhibit MM). The complaint also acknowledges that Hani and Muna never lived together or consummated their marriage but maintains that this was not "unusual in the Muslim world," especially when the woman is young

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in the complaint [2]. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

and still in school as Muna was, and that Hani and Muna "were still legally married under Wisconsin law and Islamic law." [2] at 8, 10.

In May 2002, Hani filed a response to the NOIR, which "included detailed affidavits and other extensive evidence" that allegedly established a bona fide marriage to Muna. [2] at 14. This evidence included "affidavits from Ms. Muna's parents, his sister-in-law, the Imam who performed the marriage ceremony, his friends who knew Ms. Muna's mother and introduced the couple to each other, his friends who attended their engagement party, wedding ceremony, and reception, and Ms. Muna's friends who attended the wedding ceremony," as well as "pictures of Hani and Ms. Muna together, and pictures of the meeting of his family and Ms. Muna's family during his visit to Jordan." [27-1] at 14. Nonetheless, the complaint alleges, legacy INS "failed to consider such evidence in revoking the approved Form I-140 alien worker immigrant visa petition." [2] at 2.

In July 2002, Hani departed the United States for Canada, which had granted him "'landed immigrant' status." [2] at 14. In August 2002, the Federal Bureau of Investigation ("FBI") in Milwaukee determined that the allegations of immigration visa fraud against Hani were unsubstantiated and closed its criminal investigation. Customs Officer Steven Suhr also concluded that he had no interest in pursuing a criminal case against Hani. Nonetheless, in October 2002, legacy INS revoked Hani's previously approved Form 1-140 visa based on allegations of marriage fraud and denied Hani's Form I-485 petition. Hani filed a complaint in the U.S. District Court for the Northern District of Illinois seeking judicial review of legacy INS's refusal to allow him to review relevant portions of his "A-file," which he allegedly needed to adequately respond to the NOIR. See *El Khader v. Perryman*, 264 F. Supp. 2d 645 (N.D. Ill. 2003). The district court

dismissed the complaint for lack of jurisdiction and the Seventh Circuit affirmed. See *El Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004).

In July 2006, U.S. Citizenship and Immigration Services ("USCIS") (an office of the U.S. Department of Homeland Security ("DHS")) approved a Form I-140 immigrant visa petition that Raed filed on behalf of Hani. The complaint alleges that since 8 U.S.C. § 1154(c) prohibits "approval of any subsequent immigrant visa petition *** where the intending immigrant has been found to have engaged in marriage fraud," USCIS's approval of the Form I-140 in 2006 "can only indicate that USCIS determined that *** Hani did not engage in marriage fraud." [2] at 15.

In July 2011, the U.S. Department of State ("DOS") National Visa Center ("NVC") informed Plaintiffs that Hani was eligible to apply for his immigrant visa and to proceed with visa case processing in Montreal, Canada. In March 2012, the NVC transferred Hani's case from Montreal to Riyadh at Hani's request. Hani, his wife, and their four children filed Forms DS-230 with the NVC in August 2012 and Forms DS-260 with the DOS Consular Electronic Application Center ("CEAC") in January 2015. Hani and his family were scheduled for interviews with a consulate officer at the U.S. Consulate in Riyadh ("Consulate"). According to the complaint, the consular officer "raised to *** Hani the issue of his previous marriage to *** Muna." [2] at 15. "Hani explained to the consular officer that the charges of marriage fraud were unsubstantiated." *Id*.

On July 15, 2015, the Consulate denied Hani's immigrant visa application. The consular officer concluded that Hani was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for "material misrepresentation." [2-8] at 16, Ex. FFF. According to the complaint, "[t]his determination was based on the previous allegations of marriage fraud." [2] at 16.

On February 22, 2018, Plaintiffs filed a complaint in this Court against the U.S. Secretary of State, the DOS, the U.S. Consul General in Riyadh, the U.S. Secretary of Homeland Security, DHS, the U.S. Attorney General, and the U.S. Department of Justice ("Defendants"). In Count One of the complaint, for violation of Due Process, Plaintiffs allege that Raed "is a United States citizen who has a protected liberty interest in having his brother Plaintiff Hani be admitted into the U.S. based on the approved Form I-130 immigrant visa petition he filed for his brother." [2] at 16. Count One asserts that "Defendants' determination that Plaintiff Hani is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) violates Plaintiff Raed's liberty interest to make personal choices regarding family matters free from unjustifiable government interference in violation of Plaintiff Raed's right to substantive due process guaranteed by the Fifth Amendment of the United States Constitution" and "also violates Plaintiff Raed's interest in having his brother Plaintiff Hani's immigrant visa application adjudicated in a manner consistent with procedural due process." [2] at 17.

In Count Two of the complaint, which is titled "Denial of Immigrant Visa Not Facially Legitimate and Bona Fide," Plaintiffs allege that the Court "has jurisdiction to adjudicate this case, notwithstanding the so-called doctrine of consular non-reviewability, because Defendants' denial of Plaintiff Hani's immigrant visa application was not based on a facially legitimate and bona fide reason." [2] at 17. Count Two contends that "Defendants' denial of Plaintiff Hani's immigrant visa application based on marriage fraud is inconsistent with the USCIS's approval of Form I-130 filed by Plaintiff Raed" and therefore "is not facially valid." *Id*. at 18. Court Two further claims that the denial of Hani's immigrant visa application based on marriage fraud also was "not made in good faith." *Id*. This claim is based on allegations that legacy INS had "acted unfairly in revoking" Hani's Form I-140 petition "four years after it had been approved" and had refused to

5

allow Hani to review evidence in his A-file in order to respond to the NOIR, as was required by legacy INS's regulations. *Id*. at 18-19.  Count Two also alleges that "USCIS continued to withhold relevant evidence" from Hani's A-file, which resulted in his filing a FOIA complaint with the U.S. District Court for the Northern District of Illinois in 2016.  See *id*. at 19-20.  According to the complaint, "[t]he records obtained in 2016 as a result of the most recent FOIA litigation that the legacy INS previously withheld from Plaintiff Hani corroborate that the legacy INS knew or should have known that he entered into a good faith marriage with Ms. Muna.  Specifically, the records contain a report from an interview with Ms. Muna in 2001, where she admits that she and Plaintiff Hani began a relationship according to Arabic and Islamic custom and that it was her parents' wishes for her to marry Plantiff Hani." *Id*. at 20 (citing [2-5] at 42, exhibit MM).

Count Three of the complaint alleges that Defendants violated the Administrative Procedures Act, 5 U.S.C. §§ 702, 704, and 706, because the consulate official's finding that Hani is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) was not supported by substantial evidence, was arbitrary and capricious, and resulted from a failure to investigate.

Plaintiffs seek a declaration that Hani is not inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) and that Defendants' determination to the contrary violated Raed's Due Process rights, was not based on a facially legitimate and bona fide reason, and violated the Administrative Procedures Act.  Plaintiffs also ask the Court to enjoin Defendants from barring Hani's admission into the United States under 8 U.S.C. § 1182(a)(6)(C)(i) and to award them attorneys fees, costs, and any other relief that the Court deems just and proper.

Currently before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). However, the Court need not accept as true "'legal conclusions or unsupported conclusions of fact.'" *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) (quoting *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

Defendants argue that Plaintiffs' due process claims must be dismissed based on the doctrine of consular nonreviewability, which is "the general rule that decisions 'to issue or withhold a visa' are not reviewable in court 'unless Congress says otherwise.'" *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). The contours of this doctrine have been in flux in recent years, with uncertainty as to when an American citizen has a due process right to challenge the denial of a family member's visa application, as well as uncertainty as to the scope of the court's review when a due process right is recognized. A few weeks ago, in *Yafai v. Pompeo*, 2019 WL 101829, -- F.3d

-- (7th Cir. Jan. 4, 2019), the Seventh Circuit issued a decision outlining the legal standards that the Court will apply in the face of this uncertainty. The Seventh Circuit explained:

> Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions. *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972). To that end, the doctrine of consular nonreviewability "bars judicial review of visa decisions made by consular officials abroad." *Matushkina*[, 877 F.3d at 294]. The Supreme Court has identified a limited exception to this doctrine, however, when the visa denial implicates a constitutional right of an American citizen. *Mandel*, 408 U.S. at 769–70; see *Morfin v. Tillerson*, 851 F.3d 710, 711 (7th Cir. 2017). Yet even in that circumstance, a court may not disturb the consular officer's decision if the reason given is "facially legitimate and bona fide." *Mandel*, 408 U.S. at 769. ***
>
> For a consular officer's decision to be facially legitimate and bona fide, the consular officer must identify (1) a valid statute of inadmissibility and (2) the necessary "discrete factual predicates" under the statute. See [*Kerry v. Din*, 135 S. Ct. 2128, 2140–41 (U.S. 2015) (Kennedy, J., concurring)]. When a statute "specifies discrete factual predicates that the consular officer must find to exist before denying a visa," the citation of the statutory predicates is itself sufficient. *Id.* at 2141. In other words, the consular officer need not disclose the underlying facts that led him to conclude that the statute was satisfied. ***
>
> It is unclear how much latitude—if any—courts have to look behind a decision that is facially legitimate and bona fide to determine whether it was actually made in bad faith. In *Mandel*, the Court refused to look behind a facially legitimate and bona fide decision over the dissent's vigorous objection that "[e]ven the briefest peek behind [it] *** would reveal that it is a sham." 408 U.S. at 778 (Marshall, J., dissenting). Yet Justice Kennedy's concurrence in *Din* observes that an "affirmative showing of bad faith" that is "plausibly alleged with sufficient particularity" might justify more searching review, 135 S. Ct. at 2141, and we have, at least in dicta, allowed for the same possibility, see *Morfin*, 851 F.3d at 713–14[.] [It may be true,] therefore, that evidence of behind-the-scenes bad faith can overcome *Mandel*'s rule that courts must stick to the face of the visa denial in evaluating it.

*Yafai*, 2019 WL 101829, at *2-*3.

In their motion to dismiss, Defendants argue that Plaintiffs' Due Process claims fail at the first step of this analysis because the denial of Hani's visa application does not implicate any recognized constitutional right of an American citizen. To resolve this issue, the Court would need

8

to determine whether the denial of Hani's visa application implicates the constitutional right of Raed to live in America with his adult brother. Plaintiffs have not identified any cases in which this has been recognized as a constitutional right. In an arguably analogous context, the Seventh Circuit has "avoided taking a position" on whether an American citizen has a right to live in America with his *spouse* and explained that "[t]he status of this right is uncertain" under Supreme Court precedent. *Yafai*, 2019 WL 101829, at *2 (emphasis added) (citing *Din*, 135 S. Ct. at 2131 (plurality opinion)).

This Court, like the Seventh Circuit in *Yafai* and prior cases, will "avoid[] taking a position" on whether Raed's due process rights have been implicated, 2019 WL 101829, at *2, because it agrees with Defendants' next argument that the allegations of the complaint show that the consular officer gave a facially legitimate and bona fide reason for his or her[2] decision and that Plaintiffs have not alleged facts sufficient to make an affirmative showing that the consular officer acted in bad faith in denying Hani's application.

In determining whether "a visa was denied for a bona fide and facially legitimate reason," the Court conducts a "limited review" under which it looks at "'the face of the decision [to] see if the officer cited a proper ground under the statute'"; it does "not look to see whether a consular official properly construed and applied relevant provisions of law." *Matushkina*, 877 F.3d at 294 (quoting *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017)). "Once that is done, if the undisputed record includes facts that would support that ground," the Court's "task is over." *Hazama*, 851 F.3d at 709.

Here, the "face of the decision" shows that the consular officer "cited a proper ground under the statute" for denying Hani's application. *Matushkina*, 877 F.3d at 294; see also *Yafai*,

---

[2] The Consulate's decision does not identify the consular officer by name. See [2-8] at 16.

2019 WL 101829, at *3. In particular, the consular officer determined that Hani made a "material misrepresentation" in violation of 8 U.S.C. § 1182(a)(6)(C)(i), which provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."  See [2-8] at 16, exhibit FFF.

Further, the allegations of the complaint and the documents attached to it demonstrate that the undisputed record includes facts that support the consular officer's determination. The complaint acknowledges that the consular officer's decision "was based on the previous allegations of marriage fraud." [2] at 16. The complaint further recognizes that in December 2001, legacy INS issued a NOIR to revoke Hani's approved Form I-140 petition on the basis that Hani had entered into a sham marriage with Muna for the purpose of obtaining an immigration benefit. According to the complaint, "[a] sham marriage or fraudulent marriage is a marriage which may comply with all the formal requirements of the law but which the parties entered into with no intent, or 'good faith,' to live together and which is designed solely to circumvent the immigrations laws." [2] at 13 (citing *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980)). The complaint attaches legacy INS's report documenting Muna's interview with an INS investigator concerning her marriage to Hani. According to the report, Muna stated that "[i]t was understood" that the marriage ceremony "was not in fact a real marriage in her custom," that "the marriage was not consummated," that Muna and Hani "never co-habituated" or established "any joint accounts," that Muna "felt she was never married," and that Muna believed that Hani "entered into the marriage to obtain legal status in the U.S." [2-5] at 42. Despite Plaintiff's assertion to the contrary, this report, which Plaintiff admits is part of the record, "provides at least a facial connection" to marriage fraud. *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring), and "forecloses any contention"

10

that Defendants were "imagining things" that had no support in the record. *Morfin*, 851 F.3d at 713. Similarly, in *Din*, the Justices who joined in Justice Kennedy's concurring opinion concluded that a visa applicant's wife's admission that her husband worked for the Taliban government provided "at least a facial connection to terrorist activity" and thus a facially legitimate and bona fide reason for denying the husband an immigrant visa for engaging in terrorist activity. *Id.*[3]

The fact that Plaintiffs can point to other evidence in the record that would allegedly support a finding that Hani and Muna's marriage was legitimate does not undermine the facial legitimacy of the consular officer's decision. Given Muna's statement, it was well within the consular officer's exercise of discretion to conclude that the marriage was not legitimate. Similarly, in *Hazama*, the Seventh Circuit concluded that evidence that a visa applicant threw rocks at Israeli soldiers when he was 13 provided a facially legitimate and bona fide reason for denying his visa application under the terrorist activity bar, even if "it would not have been outside the consular officer's discretion to consider this as an act of juvenile rebellion rather than an act of terrorism." 851 F.3d at 709. "[W]hatever the residual authority" the Court has to review the consular officer's decision, it "cannot be triggered by every possible recharacterization of an act." *Id.*

Plaintiffs argue that the Court should nonetheless look behind the consular officer's decision because they have alleged sufficient facts to state a claim that Hani's application was denied in bad faith. According to Plaintiffs, the consular official's failure to follow the established procedures for handling applications where marriage fraud is suspected is evidence of bad faith. In particular, Plaintiffs rely on 8 U.S.C. § 1154(c) and provisions of the Foreign Affairs Manual

---

[3] *Din* "failed to produce an authoritative opinion of the Court," *Hazama*, 851 F.3d at 708, and the Seventh Circuit has avoided "determin[ing] how to identify the controlling view in *Din*, given that the concurring opinion is not a logical subset of the lead opinion (or the reverse)." *Morfin*, 851 F.3d at 713.

11

("FAM"), 9 FAM 504.2-5(C)(2)(d)(1) and (2), and 8 C.F.R. § 103.2(b)(16)(i). Plaintiffs contend that these provisions, taken together, required the consular officer, upon learning that USCIS had approved Raed's Form I-130, to "refer the case back to USCIS for possible revocation," in which case Plaintiffs would have been given an opportunity to present evidence that Hani did not engage in marriage fraud. Rather than follow this procedure, Plaintiffs argue, "the consular officer denied the immigrant visa on the basis of marriage fraud, thereby circumventing the process under the regulations that would have provided Plaintiffs an opportunity to rebut the charges." [27-1] at 12. According to Plaintiffs, "[t]he consular officer's denial of the visa based on marriage fraud, in effect, was a summary revocation of the visa petition." *Id*.

As *Yafai* recognizes, it is "unclear how much latitude—if any" the Court has to determine whether the consular official's decision was made in bad faith. 2019 WL 101829, at *3. Assuming this issue is properly before the Court, Plaintiffs' bad faith argument nonetheless fails to survive dismissal. As an initial matter, the claim that Plaintiffs make here is not the claim that they make in their complaint, and Plaintiffs "cannot amend [the] complaint by raising new claims in response to the motion to dismiss." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008). The complaint does not allege that the consular officer failed to return the petition to the NVC (which would then forward it to DHS for review and possible revocation) or failed to follow any other applicable procedures. Instead, the complaint alleges that "[g]iven the clear evidence contained throughout the record of Plaintiff Hani's innocence of marriage fraud and the USCIS's decision to approve Plaintiff Raed's Form I-130 fourth preference immigrant visa petition notwithstanding 8 U.S.C. § 1154(c), Defendants acted in bad faith in denying Plaintiff Hani's immigrant visa application based on unsubstantiated allegations of marriage fraud." [2] at 20.

12

In their response to Defendants' motion to dismiss, Plaintiffs appear to have abandoned their position that USCIS's approval of the Form I-130 is evidence that the consular acted in bad faith by denying Hani's application, explaining that they "do not suggest that a consular officer must 'rubber stamp' a visa application once USCIS approves the underlying petition." [27-1] at 12. Correctly so because, as Defendants point out, consular officials are required to engage in their own review of visa applicants' eligibility; they are not permitted or required to simply follow the USCIS's approval of the underlying positions. See 8 U.S.C. § 1201(a)(1) (authorizing consular officer to issue immigrant visas to immigrants who have made proper applications); §1202 (requiring all immigrant visa applications to be reviewed and adjudicated by a consular officer); § 1361 (placing on applicant for immigrant visa the burden to establish that he is eligible and prohibiting consular officer to issue visa when applicant "fails to establish the satisfaction of the consular officer that he is eligible").

Plaintiffs' new argument, that the consular official's failure to follow the established procedures for handling applications where marriage fraud is suspected is evidence of bad faith, is not plausible under the facts alleged here. Plaintiffs have not pointed to any statute, regulations, or manuals that required the consular officer to give Hani any more opportunity than he had to rebut the charges of marriage fraud. And the FAM provisions that Plaintiffs cite, 9 FAM 504.2-5(C)(2)(d)(1) and (2), do not require the consular officer to consult with DHS or to reconsider its own decision once DHS determines whether its approval of an application should be revoked. Thus, even if the consular officer should have, but failed, to return the petition to the NVC (which would then be responsible for forwarding it to DHS to review and possibly revoke its approval), this would have had no apparent effect on the consular officer's own decision.

Instead, the FAM provisions cited by Plaintiffs show that the consular officer is supposed to perform an independent review to determine if there is "evidence *** documented in the alien's file" of an attempt or conspiracy to commit marriage fraud—and it "is not necessary for the alien to have been convicted of, or even prosecuted for, the attempt or conspiracy." See 9 FAM 504.2-5(C)(2)(d)(1), available at https://fam.state.gov/FAM/09FAM/09FAM050402.html (last checked Jan. 31, 2019). There was evidence in Hani's file supporting the consular officer's determination. It is undisputed that legacy INS had revoked its approval of Hani's Form I-140 petition on the basis that he entered into a sham marriage; it is also undisputed that Muna's interview was part of the record, and that she told investigators that she and Hani never entered into a real marriage.

Moreover, as Defendants point out, "Plaintiffs have cited no authority establishing that failure to follow the FAM guidelines amounts to an affirmative showing of bad faith, and at least one district court has found precisely to the contrary." [28] at 7 (citing *Waxler v. Tillerson*, 2017 WL 8185853, at *5 (C.D. Cal. Aug. 11, 2017) (holding that "[a] conclusory allegation" that consular official's visa denial "violated the precedent of the Board of Immigration Appeals and the guidelines set forth in the State Department's Foreign Affairs Manual" are insufficient to support allegation that consular official acted in bad faith)). This lack of authority is not surprising, given the Seventh Circuit's instruction that, in determining whether "a visa was denied for a bona fide and facially legitimate reason," the court does "not look to see whether a consular official properly construed and applied relevant provisions of law." *Matushkina*, 877 F.3d at 294.

In further support of their claim of bad faith, Plaintiffs allege in their complaint (although do not pursue the argument in response to the motion to dismiss) that "the DOS, legacy INS, and USCIS have acted in bad faith in Plaintiff Hani's case" because "there is ample evidence in his alien file *** that he entered into a good faith marriage with Ms. Muna," [2] at 3, including that

14

the bride and groom's families set up and approved the marriage, the marriage was performed in accordance with their faith, and there was a large ceremony and reception attended by the couples' family and friends. But in *Yafai*, the Seventh Circuit rejected a similar "bad faith" argument that was based on a claim that "the evidence [the visa applicants] produced was strong, and the officer did not accept it." 2019 WL 101829, at *3. As in *Yafai*, "the fact that the officer did not believe" Hani's "evidence does not mean that the officer was dishonest or had an illicit motive," as required to demonstrate bad faith. *Id*. at *4.

Finally, the complaint alleges in support of Plaintiffs' bad faith argument that "[t]he records obtained in 2016 as a result of the most recent FOIA litigation that the legacy INS previously withheld from Plaintiff Hani corroborate that the legacy INS knew or should have known that he entered into a good faith marriage with Ms. Muna." [2] at 20. "Specifically, the records contain a report from an interview with Ms. Muna in 2001, where she admits that she and Plaintiff Hani began a relationship according to Arabic and Islamic custom and that it was her parents' wishes for her to marry Plaintiff Hani." *Id.* (citing [2-5] at 42, exhibit MM). Be that as it may, the report of Muna's interview shows that she *also* told investigators that "[i]t was understood" that the marriage ceremony "was not in fact a real marriage in her custom," that "the marriage was not consummated," that Muna and Hani "never co-habituated" or established "any joint accounts," that Muna "felt she was never married," and that Muna felt that Hani "entered into the marriage to obtain legal status in the U.S." [2-5] at 42. E. These statements conflict with the complaint's conclusion that the all of the record evidence corroborates Plaintiffs' contention that Hani entered into a good faith marriage with Muna.

For these reasons, the Court concludes that the complaint fails to plausibly allege that the consulate officer denied Hani's visa application for a reason that was not bona fide or facially

15

legitimate or that the consulate officer acted in bad faith. Therefore, Defendants' motion to dismiss Plaintiffs' due process claims (Counts One and Two) is granted. Plaintiffs' Administrative Procedures Act Claim (Count Three) is also dismissed. Where, as here, the doctrine of consular nonreviewability applies, it also bars an indirect challenge to the consular officer's visa decision via the Administrative Procedures Act. *Yafai*, 2019 WL 101829, at *4 (citing *Morfin*, 851 F.3d at 714 (dismissing claim under the APA because doctrine of consular nonreviewability applies); *Matushkina*, 877 F.3d at 295 (stating that "[c]ourts have applied the doctrine of consular nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly")).

## IV. Conclusion

For these reasons, Defendants' motion to dismiss [25] is granted. This dismissal is without prejudice to Plaintiffs' opportunity to file a timely motion for leave to file an amended complaint by March 4, 2019, if they believe they can do so consistent with this Court's opinion and Rule 11. If no motion is filed by that date, the Court will enter an order converting the dismissal to be with prejudice and will enter a Rule 58 final judgment.

Dated: February 4, 2019

_____
Robert M. Dow, Jr.
United States District Judge