**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAED AL KHADER and HANI HASAN AHMAD EL KHADER a/k/a AL KHADER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-1355 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| MICHAEL POMPEO, United States Secretary of State, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Raed Al Khader ("Raed") and Hani Hasan Ahmed El Khader a/k/a Al Khader ("Hani") seek leave to file an amended complaint for declaratory relief challenging the July 16, 2015 decision of the U.S. Consulate in Riyadh denying Hani's immigrant visa application and finding him to be inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for a material misrepresentation. See [33]. For the reasons explained below, Plaintiffs' motion [33] is denied. In view of the nature of these claims, the Court will give Plaintiffs one last opportunity to file a motion for leave to amend no later than February 24, 2020, if they believe that a claim can be stated consistent with the Court's opinions. If no motion for leave is filed by that date—or if Plaintiffs advise the Courtroom Deputy that they will not be seeking leave to amend prior to that date—the Court will enter a final and appealable judgment under Federal Rule of Civil Procedure 58 and terminate this case in the district court.

## I.     Background[1]

Plaintiffs Raed and Hani are brothers.  Their family is originally from Palestine.  Raed is a United States citizen, living in Highland Park, Illinois.  Hani is a citizen of Jordan and currently resides in Saudi Arabia.  Hani lived in the United States from December 1988 until July 2002 and maintained lawful immigration status during that period under several types of visas.

In 1994, Ameritrust Mortgage Corporation ("Ameritrust") filed Form ETA-750, application for employment certification, with the U.S. Department of Labor ("DOL") for Hani to work as a Cost Analyst in its company.  In March 1998, Ameritrust prepared and submitted Form I-140, immigrant visa petition for alien worker with legacy INS on behalf of Hani.  Legacy INS approved the petition in August 1998.

While that petition was pending, Hani entered into a brief marriage with a citizen of the United States named Nadia Muna ("Muna"), who was 17 at the time of the marriage.  According to the proposed amended complaint, the May 1997 marriage was arranged by Hani's and Muna's families according to the common practice of Muslim and Arab families.  [33-1] at 7.  In July 1997, Muna and Hani filed Form I-130, immigrant visa petition for alien relative, and Form I-485, application to adjust status, with legacy INS, based on Hani being the spouse of a U.S. citizen.  In March 1998, Muna filed for divorce, which was granted in October 1998.

In December 2001, legacy INS issued a Notice of Intent to Revoke ("NOIR") the previously approved Form I-140 petition on the basis that Hani had entered into a sham marriage with Muna.  In response, Hani filed several requests with legacy INS to review the information alleged and contained in his "A-file" so that he could adequately respond to the NOIR.  [33-1] at 14.  Legacy INS refused.

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pled allegations set forth in the proposed amended complaint [33-1].

Instead, the proposed amended complaint alleges, legacy INS "engaged in a fishing expedition to find a reason to deny" Hani's visa. [33-1] at 24. In March 2001, legacy INS sent a special agent to interview Muna. According to the proposed amended complaint, "Muna allegedly provided conflicting statements to the special agent, first claiming she was never in a real marriage with Hani, but then admitting that it was her parents' wishes for her to marry Hani." [33-1] at 14; see also [33-1] at 5, n.1 (explaining that the proposed amended complaint refers to the exhibits filed with the original complaint); [2-5] at 42, Ex. MM (interview notes filed as exhibit to original complaint). The proposed amended complaint acknowledges that Hani and Muna never lived together or consummated their marriage but maintains that this was not "unusual in the Muslim world," especially when the woman is young and still in school as Muna was, and that Hani and Muna "were still legally married under Wisconsin law and Islamic law." [33-1] at 9, 11.

In May 2002, Hani filed a response to the NOIR, which "included detailed affidavits and other extensive evidence" that allegedly established a bona fide marriage to Muna. [33-1] at 14. This evidence included "affidavits from Ms. Muna's parents, his sister-in-law, the Imam who performed the marriage ceremony, his friends who knew Ms. Muna's mother and introduced the couple to each other, his friends who attended their engagement party, wedding ceremony, and reception, and Ms. Muna's friends who attended the wedding ceremony," as well as "photos of [Hani] and Ms. Muna together, and photos of the meeting of his family and Ms. Muna's family during his visit to Jordan." *Id*. at 29. Hani's response also included an expert affidavit from a professor of Islamic religion, which explained that "arranged marriages are common in Muslim and Arabic families" and it is "common for a married couple to delay living together and consummating the marriage for a variety of reasons." *Id*. at 15; see also *id.* at 30. Nonetheless, the proposed amended complaint alleges, legacy INS "failed to address any of these issues when

it revoked the Form I-140 immigrant visa petition filed by Ameritrust on behalf of Plaintiff Hani." *Id.*

In July 2002, Hani departed the United States for Canada, which had granted him "'landed immigrant' status." [133-1] at 15. In August 2002, the Federal Bureau of Investigation ("FBI") in Milwaukee determined that the allegations of immigration visa fraud against Hani were unsubstantiated and closed its criminal investigation. Customs Officer Steven Suhr also concluded that he had no interest in pursuing a criminal case against Hani. Nonetheless, in October 2002, legacy INS revoked Hani's previously approved Form I-140 visa based on allegations of marriage fraud and denied Hani's Form I-485 petition.

Hani filed a complaint in the U.S. District Court for the Northern District of Illinois seeking judicial review of legacy INS's refusal to allow him to review relevant portions of his "A-file," which he allegedly needed to adequately respond to the NOIR. See *El Khader v. Perryman*, 264 F. Supp. 2d 645 (N.D. Ill. 2003). The district court dismissed the complaint for lack of jurisdiction and the Seventh Circuit affirmed. See *El Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004) (holding that "the decision to revoke a previously approved visa petition pursuant to 8 U.S.C. § 1155 is expressly left to the discretion of the Attorney General").

In July 2006, U.S. Citizenship and Immigration Services ("USCIS") (an office of the U.S. Department of Homeland Security ("DHS")) approved a Form I-140 immigrant visa petition that Raed had filed on behalf of Hani in September 2001. The complaint alleges that since 8 U.S.C. § 1154(c) prohibits "approval of any subsequent immigrant visa petition *** where the intending immigrant has been found to have engaged in marriage fraud," USCIS's approval of the Form I-140 in 2006 "can only indicate that USCIS determined that Hani did not engage in marriage fraud with Ms. Muna." [33-1] at 16.

In July 2011, the U.S. Department of State ("DOS") National Visa Center ("NVC") informed Plaintiffs that Hani was eligible to apply for his immigrant visa and to proceed with visa case processing in Montreal, Canada. In March 2012, the NVC transferred Hani's case from Montreal to Riyadh at Hani's request. Hani, his wife, and their four children filed Forms DS-230 with the NVC in August 2012 and Forms DS-260 with the DOS Consular Electronic Application Center ("CEAC") in January 2015. Hani and his family were scheduled for interviews with a consulate officer at the U.S. Consulate in Riyadh ("Consulate"). According to the proposed amended complaint, the consular officer "raised to Plaintiff Hani the issue of his previous marriage to Ms. Muna." [33-1] at 16-17. "Hani explained to the consular officer that the charges of marriage fraud were unsubstantiated." *Id.* at 17.

On July 16, 2015, the Consulate denied Hani's immigrant visa application based on a determination that Hani was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for material misrepresentation. According to the proposed amended complaint, "[t]his determination was based on the previous allegations of marriage fraud." [33-1] at 17.

On February 22, 2018, Plaintiffs filed a complaint in this Court against the U.S. Secretary of State, the DOS, the U.S. Consul General in Riyadh, the U.S. Secretary of Homeland Security, DHS, the U.S. Attorney General, and the U.S. Department of Justice ("Defendants"). In Count One of the complaint, for violation of Due Process, Plaintiffs alleged that Raed "is a United States citizen who has a protected liberty interest in having his brother Hani be admitted into the U.S. based on the approved Form I-130 immigrant visa petition he filed for his brother." [2] at 16. Count One asserted that "Defendants' determination that Hani is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) violates Plaintiff Raed's liberty interest to make personal choices regarding family matters free from unjustifiable government interference in violation of Plaintiff Raed's right

to substantive due process guaranteed by the Fifth Amendment of the United States Constitution" and "also violates Plaintiff Raed's interest in having his brother Hani's immigrant visa application adjudicated in a manner consistent with procedural due process." [2] at 17.

In Count Two of the complaint, which was titled "Denial of Immigrant Visa Not Facially Legitimate and Bona Fide," Plaintiffs alleged that the Court "has jurisdiction to adjudicate this case, notwithstanding the so-called doctrine of consular non-reviewability, because Defendants' denial of Hani's immigrant visa application was not based on a facially legitimate and bona fide reason." [2] at 17. Count Two asserted that "Defendants' denial of Hani's immigrant visa application based on marriage fraud is inconsistent with the USCIS's approval of Form I-130 filed by Plaintiff Raed" and therefore "is not facially valid." *Id*. at 18. Court Two further claimed that the denial of Hani's immigrant visa application based on marriage fraud also was "not made in good faith." *Id*. This claim was based on allegations that legacy INS had "acted unfairly in revoking" Hani's Form I-140 petition "four years after it had been approved" and had refused to allow Hani to review evidence in his A-file in order to respond to the NOIR, as allegedly required by legacy INS's regulations. *Id*. at 18-19. Count Two also alleged that "USCIS continued to withhold relevant evidence" from Hani's A-file, which resulted in his filing a FOIA complaint with the U.S. District Court for the Northern District of Illinois in 2016. See *id*. at 19-20. According to the complaint, "[t]he records obtained in 2016 as a result of the most recent FOIA litigation that the legacy INS previously withheld from Hani corroborate that the legacy INS knew or should have known that he entered into a good faith marriage with Ms. Muna. Specifically, the records contain a report from an interview with Ms. Muna in 2001, where she admits that she and Hani began a relationship according to Arabic and Islamic custom and that it was her parents' wishes for her to marry Plaintiff Hani." *Id*. at 20 (citing [2-5] at 42, Ex. MM).

Count Three of the complaint alleged that Defendants violated the Administrative Procedures Act, 5 U.S.C. §§ 702, 704, and 706, because the consulate official's finding that Hani is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) was not supported by substantial evidence, was arbitrary and capricious, and resulted from a failure to investigate.

The Court granted Defendants' motion to dismiss, which was premised on the doctrine of consular non-reviewability. See [32]. The Court gave Plaintiff an opportunity to file a timely motion for leave to file an amended complaint, which Plaintiffs did on March 4, 2019. See [33]. Plaintiffs explain that the proposed amended complaint is intended to address this Court's decision regarding consular non-reviewability [32] and the Seventh Circuit's decision in *Yafai v. Pompeo*, 912 F.3d 1018 (7th Cir. 2019), as well as to clarify Plaintiffs' "procedural and substantive due process claims and additional law regarding the adjudication and revocation of immigrant visa petitions by the USCIS and the U.S. Department of State." [33] at 2. The first two counts of the proposed amended complaint, titled "Due Process Violation" and "Denial of Immigrant Visa Not Facially Legitimate and Bona Fide," are essentially the same as the first two counts of the original complaint, with a few additions. In Count II, Plaintiffs argues that, "[b]ecause the basis of the consular officer's denial of the visa application is legally inconsistent with 8 U.S.C. § 1154(c) and the USCIS's approval of Plaintiff Raed's Form I-130 immigrant visa petition, the consular officer did not cite to a valid statute of inadmissibility and therefore his decision is not facially valid." [33-1] at 23. Plaintiffs also contend that the denial of Hani's visa application was not made in good faith for two reasons. First, Plaintiffs assert that, "[g]iven the clear evidence contained throughout the record of Hani's innocence of any marriage fraud and the USCIS's decision to approve Plaintiff Raed's Form I-130 fourth preference immigrant visa petition notwithstanding 8 U.S.C. § 1154(c), the consular officer acted in bad faith in denying Hani's immigrant visa

application based on unsubstantiated allegations of marriage fraud." [33-1] at 26. Second, Plaintiffs contend that "[t]he consular officer further acted in bad faith in failing to follow proper procedure and return the Form I-130 immigrant visa petition to USCIS." [33-1] at 26. Plaintiffs allege that "[u]pon return of Form I-130 to the USCIS, the USCIS would then decide whether to initiate the revocation process." *Id.* "If USCIS decided to initiation the revocation process, it would have to inform Plaintiff Raed in a Notice of Intent to Revoke of the alleged marriage fraud, thereby providing Plaintiffs Raed and Hani the opportunity to rebut the allegations of marriage fraud." *Id*. at 26-27 (citing 9 FAM 504.2-5(C)(2)(d)(1) and (3); 8 C.F.R. § 103.2(b)(16)(i)).

The proposed amended complaint does not include a Count Three. Counts Four (First Amendment) and Five (Equal Protection) are both new and, according to Plaintiffs, intended to "emphasize Hani's strong evidence of innocence of marriage fraud" by showing that "the consular officer's decision violated their First Amendment right to exercise their religion as Muslims and Fifth Amendment equal protection right to be free from religious discrimination." [38] at 6. More specifically, proposed Count Four alleges that "Defendants' failure to adequately consider Hani's evidence that his marriage arrangement with Ms. Muna was common among Muslim and Arabic couples violated the free exercise clause of the First Amendment by discriminating on the basis of religion." [33-1] at 30. Proposed Count Five alleges that "[t]he consular officer's failure to adequately consider Hani's evidence that his marriage arrangement with Ms. Muna was common among Muslim and Arabic couples in finding Hani inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for fraud and willful misrepresentations violated the Equal Protection Clause of the Fourteenth Amendment by discriminating on the basis of religion." [33-1] at 31.

Defendants oppose Plaintiffs' motion for leave to file an amended complaint, contending that the proposed amended complaint suffers from the same fatal flaws identified in the Court's

decision dismissing the original complaint and, therefore, allowing amendment would be futile. See [36].

## II.     Legal Standard

A motion for leave to file an amended complaint should "freely" be granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). Thus, leave to amend is freely given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

The Court "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). It should be "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted'" before leave to amend is denied. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)); see also *Luvert v. Chicago Hous. Auth.*, 142 F. Supp. 3d 701, 706 (N.D. Ill. 2015). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002)).

For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). However, the Court need not accept as true "'legal conclusions or unsupported conclusions of fact.'" *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) (quoting *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). In addition, it is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

## III.    Analysis[2]

Defendants argue that allowing Plaintiffs to file an amended complaint would be futile because the proposed amended complaint, like the original complaint, must be dismissed based on the doctrine of consular non-reviewability, which is "the general rule that decisions 'to issue or

---

[2] As it did in its decision dismissing the original complaint—and as the Seventh Circuit did in *Yafai*, 2019 WL 101829, at *2, in regard to an American citizen seeking to have his or her spouse admitted to the country—the Court will avoid taking a position on the threshold issue of whether an American citizen's desire to have an adult sibling reside in the United States raises a constitutionally-recognized interest.

withhold a visa' are not reviewable in court 'unless Congress says otherwise.'" *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)).  As the Court explained in its prior decision, it cannot "disturb the consular officer's decision if the reason given is 'facially legitimate and bona fide.'" *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972)).  "For a consular officer's decision to be facially legitimate and bona fide, the consular officer must identify (1) a valid statute of inadmissibility and (2) the necessary 'discrete factual predicates' under the statute." *Id*. (quoting *Kerry v. Din*, 135 S. Ct. 2128, 2140–41 (U.S. 2015) (Kennedy, J., concurring).  However, "[w]hen a statute 'specifies discrete factual predicates that the consular officer must find to exist before denying a visa,' the citation of the statutory predicates is itself sufficient." *Id*. (quoting *Kerry*, 135 S. Ct. at 2141 (Kennedy, J., concurring)).

In determining whether "a visa was denied for a bona fide and facially legitimate reason," the Court conducts a "limited review" under which it looks at "'the face of the decision [to] see if the officer cited a proper ground under the statute'"; it does "not look to see whether a consular official properly construed and applied relevant provisions of law." *Matushkina*, 877 F.3d at 294 (quoting *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017)).  "Once that is done, if the undisputed record includes facts that would support that ground," then ordinarily the Court's "task is over." *Hazama*, 851 F.3d at 709.  The Seventh Circuit has also recognized the possibility, based on Justice Kennedy's concurring opinion in *Din*, 135 S. Ct. at 2141, that "an 'affirmative showing of bad faith' that is 'plausibly alleged with sufficient particularity' might justify more searching review." *Yafai*, 912 F.3d at 1021.  In other words, "evidence of behind-the-scenes bad faith" *might* "overcome *Mandel*'s rule that courts must stick to the face of the visa denial in evaluating it," although "[i]t is unclear how much latitude—if any—courts have to look behind a decision that is

facially legitimate and bona fide to determine whether it was actually made in bad faith." *Id*. at 1022.

Applying these standards, the Court concludes, as it did previously, that Plaintiffs have failed to state a plausible claim that the consular officer's decision was not facially legitimate or bona fide or made in bad faith. The "face of the decision" challenged by Plaintiffs shows that the consular officer "cited a proper ground under the statute" for denying Hani's application. *Matushkina*, 877 F.3d at 294. In particular, the consular officer determined that Hani made a "material misrepresentation" in violation of 8 U.S.C. § 1182(a)(6)(C)(i), which provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." See [2-8] at 16, Ex. FFF.

Plaintiffs argue that the Consulate's decision was not facially legitimate (and was also in bad faith) because "the consular officer acted beyond his statutory authority and in violation of regulations and procedures." [38] at 5. In particular, Plaintiffs contend that, pursuant to 6 U.S.C. § 236(b)(1) and (c)(1), "DHS has the ultimate authority to refuse a visa, unless the refusal is related to U.S. foreign policy or security interests, in which case the U.S. Department of State maintains the ultimate authority to refuse a visa." [38] at 3-4; see also [33-1] at 4. Therefore, Plaintiffs argue, "the consular officer does not have authority to refuse a visa where the refusal would contradict the DHS's finding regarding the absence of marriage fraud, which is demonstrated by DHS's approval of the immigration visa petition." [38] at 4.

As an initial matter, Plaintiffs' arguments, even if correct, do not show that Hani was denied a visa on an illegitimate basis because, in determining whether "a visa was denied for a bona fide and facially legitimate reason," the court does "not look to see whether a consular official properly

construed and applied relevant provisions of law." *Matushkina*, 877 F.3d at 294. Instead, it is to conduct a "'limited review'" under which it looks at "'the face of the decision [to] see if the officer cited a proper ground under the statute.'" *Matushkina*, 877 F.3d at 294 (quoting *Hazama*, 851 F.3d at 709).

In any event, the statutes cited by Plaintiffs do not support their argument that the consular officer lacked authority to deny Hani a visa. To the contrary, 6 U.S.C. § 236(b)(1) provides that "the Secretary [of DHS] shall not have authority to alter or reverse the decision of a consular officer to refuse a visa to an alien." 6 U.S.C. § 236(c)(1) authorizes the Secretary of State to "direct a consular to refuse a visa to an alien if the Secretary of State deems such refusal necessary or advisable in the foreign policy or security interests of the United States"; it does not limit a consulate's ability to refuse a visa. Thus, Plaintiffs provide no statutory support for their conclusion that "the consular officer does not have authority to refuse a visa where the refusal would contradict the DHS's finding regarding the absence of marriage fraud, which is demonstrated by DHS's approval of the immigration visa petition." [38] at 4. Further, there is no plausible factual basis alleged for Plaintiffs' conclusion that DHS made any "finding," *id.*, that "Hani did not engage in marriage fraud with Ms. Muna." [33-1] at 16. The proposed amended complaint contains no allegations from which it could plausibly be inferred that USCIS was aware of legacy INS's previous revocation, somehow decided that legacy INS's decision must have been wrong, made a "finding" of no marriage fraud, and therefore approved the petition.

Plaintiffs also contend that the consular officer's decision was not facially legitimate because it did not comply with the procedures set forth in the Foreign Affairs Manuel ("FAM"). According to Plaintiffs, "consular officers are required to return DHS-approved immigrant visa petitions back to the DHS USCIS for revocation procedures if he or she suspects marriage fraud."

[38] at 4; see also [33-1] at 21 (citing 9 FAM 504.2-5(C)(2) ("If the consular officer receives a DHS-approved petition and upon review determines that the marriage was entered into for the purpose of evading the immigration laws, the consular officer must return the petition to the National Visa Center (NVC), which will forward to DHS for review and possible revocation.").

In the sur-reply brief filed by the Government at the Court's request, Defendants assert: "9 FAM 504.2-8(A)(2) only requires a consular officer to return a petition to USCIS if the consular officer knows or has reason to believe that the *current* petition for which the applicant is using as a basis to apply for an immigrant visas was obtained by fraud or misrepresentation. Here, where the fraud related to a *prior* marriage and petition, the FAM does not apply." [40] at 3 (emphasis added). The provision cited by Defendants provides that "You will suspend action and return the petition to USCIS (see 9 FAM 504.2-8(B)(1) below through NVC if: ***(2) (U) You know, or have reason to believe, the petition approval was obtained by fraud, misrepresentation, or other unlawful means." 9 FAM 504.2-8(A)(2).

The FAM provisions cited by the parties are dense, complicated, and not particularly clear, and neither party explains its interpretation of the FAM in sufficient detail to allow the Court to come to a confident conclusion about whether the consulate complied with the FAM in Hani's case. But the Court need not make such a determination to evaluate whether Plaintiff states a claim upon which relief may be granted. Even if USCIS did not comply with the FAM, that alone is insufficient to overcome the doctrine of consular non-reviewability. It does not render the consular officer's decision facially illegitimate, because that analysis looks to whether the consulate cited a valid statutory basis for inadmissibility, *Yafai*, 912 F.3d at 1018—*not* "whether a consular official properly construed and applied relevant provisions of law." *Matushkina*, 877 F.3d at 294. Further, the FAM is not even a "relevant provision[] of law"; it is an agency manual. See *Christensen v.*

*Harris County*, 529 U.S. 576, 587 (2000) (observing that interpretations contained in policy statements, agency manuals, and enforcement guidelines "lack the force of law"); *Waxler v. Tillerson*, 2017 WL 8185853, at *5 (C.D. Cal. 2017) (explaining that "[t]he Court need not address the substance" of plaintiff's claim that the denial of her visa "violated the precedent of the Board of Immigration Appeals and the guidelines set forth in the State Department's Foreign Affairs Manual," because "the Court cannot consider alleged procedural failings under the facially legitimate and bona fide reason standard set forth in *Din*").

Further, the facts alleged by Plaintiffs do not plausibly support a conclusion that the consulate officers' alleged failure to comply with the FAM is "evidence of behind-the-scenes bad faith." *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring). The consular officer was not the one who determined that Hani had engaged in marriage fraud—*Legacy INS* made that determination years earlier, and the consular officer simply recognized that decision. Plaintiffs' challenge is really a challenge to legacy INS' decision. But the Seventh Circuit held a decade and a half ago that legacy INS' "decision to revoke [Hani's] previously approved visa petition pursuant to 8 U.S.C. § 1155 [was] expressly left to the discretion of the Attorney General." *El Khader*, 366 F.3d at 568.

The Court also is not persuaded by Plaintiffs' argument that, if the consulate had followed the proper procedure, Hani would have had "an opportunity to rebut the allegations of marriage fraud in revocation procedures" set out in 8 C.F.R. §103.2(b)(16)(i). [38] at 5. The proposed amended complaint selectively quotes from this regulation to argue that "before the USCIS can revoke the Form I-130 immigrant visa petition, it must issue a Notice of Intent to Revoke to the petitioner in which 'he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered.'" [33-

15

1] at 21, ¶ 83 (quoting 8 C.F.R. §103.2(b)(16)(i)). But the cited provision applies only where there is "derogatory information unknown to petitioner or applicant," which Plaintiffs do not claim to be the case here. 8 C.F.R. §103.2(b)(16)(i) ("If the decision will be adverse to the applicant or petitioner *and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware*, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding." (emphasis added)). It is clear from the proposed amended complaint that Plaintiffs were well aware of legacy INS' previous determination that his marriage to Muna was illegitimate.

In support of their contention that the consular officer's decision was not facially legitimate or bona fide, Plaintiffs also cite "strong evidence that Hani did not commit marriage fraud," including "Ms. Muna's own alleged admissions to the legacy INS investigators that she began a relationship with Hani according to Arabic and Islamic custom and that she married Hani because of her parents' wishes," and expert and lay witness affidavits obtained by Plaintiff in the legacy INS proceeding and subsequent proceedings. [38] at 5-6. But this evidence focuses on the strength of the applicant's underlying case, not whether the consulate's decision is facially legitimate and bona fide—which, in turn, simply focuses on whether a valid statutory basis of admission was cited. Nor is Plaintiffs' alleged "strong evidence" sufficient to support a plausible claim that the consular officer acted in bad faith. In *Yafai*, the Seventh Circuit rejected a similar "bad faith" argument that was based on a claim that "the evidence [the visa applicants] produced was strong, and the officer did not accept it." 2019 WL 101829, at *3. As in *Yafai*, "the fact that the officer

did not believe" Hani's "evidence does not mean that the officer was dishonest or had an illicit motive," as required to demonstrate bad faith. *Id*. at *4.

Finally, the allegations of the proposed amended complaint and the exhibits attached to the original complaint (on which Plaintiff relies to support the proposed amended complaint, as well, see [33-1] at 5, n.1) include facts in the record that support the consular officer's determination. The proposed amended complaint acknowledges that the consular officer's decision "was based on the previous allegations of marriage fraud." [33-1] at 17. The proposed amended complaint further recognizes that in December 2001, legacy INS issued a NOIR to revoke Hani's approved Form I-140 petition on the basis that Hani had entered into a sham marriage with Muna for the purpose of obtaining an immigration benefit. *Id.* at 14. According to the proposed amended complaint, "[a] sham marriage or fraudulent marriage is a marriage which may comply with all the formal requirements of the law but which the parties entered into with no intent, or 'good faith,' to live together and which is designed solely to circumvent the immigrations laws." *Id*. at 28 (citing *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980)). The record submitted with the original complaint includes legacy INS's report documenting Muna's interview with an INS investigator concerning her marriage to Hani. According to the report, Muna stated that "[i]t was understood" that the marriage ceremony "was not in fact a real marriage in her custom," that "the marriage was not consummated," that Muna and Hani "never co-habituated" or established "any joint accounts," that Muna "felt she was never married," and that Muna believed that Hani "entered into the marriage to obtain legal status in the U.S." [2-5] at 42. Despite Plaintiff's assertion to the contrary, this report, which Plaintiff admits is part of the record, "provides at least a facial connection" to marriage fraud. *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring), and "forecloses any contention" that Defendants were "imagining things" that had no support in the record. *Morfin*, 851 F.3d at

713.  Similarly, in *Din*, the Justices who joined in Justice Kennedy's concurring opinion concluded that a visa applicant's wife's admission that her husband worked for the Taliban government provided "at least a facial connection to terrorist activity" and thus a facially legitimate and bona fide reason for denying the husband an immigrant visa for engaging in terrorist activity.  *Id.*

Plaintiff alleges in the proposed amended complaint that the report was "never signed by Ms. Muna and was based on hearsay statements allegedly made by Ms. Muna to the INS special investigator."  [33-1] at 14.  However, Plaintiff does not develop any argument or cite any case law suggesting that the interview notes are not properly considered as part of the record simply because they are not signed.  The Court's own research suggests that the contrary is true, as "[h]earsay is admissible in immigration proceedings as long as it is probative and its use is not fundamentally unfair."  *Sehgal v. Lynch*, 813 F.3d 1025 (7th Cir. 2016).  Ms. Muna's own perspective on her marriage to Hani is obviously probative to a determination of whether the couple's marriage was legitimate, and Plaintiffs do not contend that the use of the interview notes is fundamentally unfair.

Even if the notes were ignored, however, the record contains additional support for the consular officer's decision.  Most importantly, the record provided by Plaintiffs includes legacy INS' "Notice of Decision to Revoke Approved Petition for Skilled Worker or Professional."  See [2-7] at 45-49.  Contrary to Plaintiffs' repeated claims that the allegations of marriage fraud were "unsubstantiated," see [33-1] at 17, 26, as well as their claim that legacy INS "failed to address" the evidence Hani submitted concerning arranged marriages in the Muslim faith, see *id.* at 30, legacy INS's decision provides a detailed summary of its investigation, the basis for its conclusion that conclusion that Hani's previously approved Form I-140 visa should be revoked, and the reasons why it did not find Hani's evidence persuasive.  The notice explains, among other things:

According to the Service's investigation, the marriage between Mr. El-Khader and Ms. Muna was a sham and was entered into for the purpose of procuring an immigration benefit. The documents submitted by Mr. El-Khader have been considered. Although Islamic marriage customs may differ than those traditionally found in the United States, Mr. El-Khader has not submitted any evidence to establish a bona fide commitment to Ms. Muna during the entire course of their marriage. It is this relationship upon which Mr. El-Khader was seeking to adjust status.

Mr. El-Khader outlines in his affidavit the few times that he visited his spouse. Yet, he failed to show any level of commitment to her with the exception of a few claimed gifts, a deferred dowry and a marriage contract. Mr. El-Khader listed his spouse as living with him and claimed this information to be true on more than one occasion to the Service. Yet, they had never lived together, never consummated the marriage and had no commingling of personal property, liabilities or finances[.]

Mr. El-Khader did not present any documentation to indicate that he and his spouse had any joint savings or checking accounts or any liabilities, such as joint credit cards. Mr. El-Khader did not even provide evidence of medical, health or car insurance for his spouse during their marriage.

Mr. El-Khader simply listed Ms. Muna as his spouse, then tried to convince the Service that they were living together, had problems and then stopped living together. Now, Mr. El-Khader admits that they did not live together and that they did not consummate the marriage through a mutual agreement based upon Islamic marriage customs. Mr. El-Khader did not establish that he had any commitment to his spouse other than a few claimed visits and a marriage contract. Yet, Mr. El-Khader attempted to procure an immigration benefit through this fraudulent marriage and attempted to make it appear that he and his spouse had resided together.

The Service has considered the affidavits and information provided on the Islamic culture. However, this evidence has not overcome the Service's intent to revoke the approved petition. The bottom line is that Mr. El-Khader led the Service to believe that he and his spouse lived together and had a bona fide marital relationship. Even though the marriage was an arranged marriage, Mr. El-Khader failed to establish any commitment to his marital union other than filing for adjustment of status. The marriage was never consummated. Therefore, it is the decision of the Service that this petition be revoked as of the date of approval.

[2-7] at 45-49 (Ex. VV).

The fact that Plaintiffs can point to other evidence in the record that they contend would

support a finding that Hani and Muna's marriage was legitimate does not undermine the facial

19

legitimacy of the consular officer's decision or create a "dispute" as to the contents of the underlying record. Plaintiffs claim that "the facts regarding Hani's marriage to Ms. Muna are in dispute," but the cited portions of the proposed amended complaint do not identify any *factual* disputes. Plaintiffs first cite the allegation that "Hani has maintained his innocence regarding the accusation of marriage fraud throughout his immigration case." [33-1] at 27, ¶ 101. That is Hani's position on a legal conclusion, not a fact. Plaintiffs also cite to their allegation that Muna's report to INS special investigators was unsigned and "contradictory and internally inconsistent because she admits that her relationship and marriage to Hani was in accordance with Islamic law and at the wishes of her parents but then claims it was not a real marriage." [33-1] at 27, ¶ 102 (citing Ex. MM). That is Plaintiffs' characterization of Muna's statement and the conclusions that should properly be drawn from it, not a factual dispute. Finally, Plaintiffs cite to "the FBI and Customs Officer's reports" contained in the record. [33-1] at 27, ¶ 102 (citing Exs. VV, WW). These simply show that the FBI and customs declined to pursue charges against Plaintiff; they do not contain any discussion of the facts at all and were created before legacy INS issued its notice of decision. See [2-7] at 43 (Ex. VV); [2-7] at 44 (Ex. WW). In sum, Plaintiffs do not identify any factual disputes, but instead challenge the *legal* conclusion reached by legacy INS, and subsequently recognized by the consular officer, that Hani's marriage to Muna was a sham. Given Muna's statement and legacy INS's detailed decision explaining the basis for revoking Hani's previously approved Form I-140 visa—including that the marriage had not been consummated, that Hani falsely represented that MUNA lived with him, and that there was no commingling of personal property, liabilities, or finances—it was well within the consular officer's exercise of discretion to conclude that the marriage was not legitimate.

For these reasons, the Court concludes that the proposed amended complaint fails to plausibly allege that the consulate officer denied Hani's visa application for a reason that was not bona fide or facially legitimate or that the consulate officer acted in bad faith. Given that conclusion, it would be futile to allow Plaintiffs to proceed on Count One or Count Two of the proposed amended complaint, for violations of Due Process. And, where (as here), the doctrine of consular non-reviewability applies, it also bars an indirect challenge to the consular officer's visa decision. See *Matushkina*, 877 F.3d at 295 (stating that "[c]ourts have applied the doctrine of consular nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly"); cf. *Yafai*, 912 F.3d at 1023 (dismissing claim under the APA because doctrine of consular nonreviewability applies). Because Plaintiffs' First Amendment (Count Four) and Equal Protection (Count Five) claims indirectly seek to overturn the consular officer's decision, they are legally barred and thus provide no valid basis for proceeding with an amended complaint.

## IV. Conclusion

For these reasons, Plaintiffs' motion for leave to file an amended complaint [33] is denied. As noted above, given the nature of these claims, the Court will give Plaintiffs one last opportunity to file a motion for leave to amend no later than February 24, 2020, if they believe that a claim can be stated consistent with the Court's opinions. If no motion for leave is filed by that date—or if Plaintiffs advise the Courtroom Deputy that they will not be seeking leave to amend prior to that date—the Court will enter a final and appealable judgment under Federal Rule of Civil Procedure 58 and terminate this case in the district court.


Dated: February 4, 2020

Robert M. Dow, Jr.
United States District Judge